UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| GRACE GRISSOM, individually and on behalf of those similarly situated, | Case No.: 1:20-cv-07948 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| -against- | |
| STERLING INFOSYSTEMS, INC., | **(JURY TRIAL DEMANDED)** |
| Defendant. | |

Plaintiff Grace Grissom ("Plaintiff"), on behalf of herself and those similarly situated, brings the following Complaint against Defendant Sterling Infosystems, Inc. ("Sterling" or "Defendant") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check that erroneously portrayed Plaintiff as a criminal.

## PRELIMINARY STATEMENT

1.      This is a case about a background check company that willfully fails to follow federal laws regarding the accuracy of its criminal background checks. Despite having been sued dozens of times regarding its inaccurate background checks, and despite being investigated by the Consumer Financial Protection Bureau ("CFPB"), Defendant has continued to issue defamatory reports due to its faulty procedures.

2.      Recognizing that the content of consumer reports can have a significant impact on people's lives, Congress has chosen to regulate the procurement, use, and content of those reports through the FCRA. 15 U.S.C. § 1681, *et seq.*

1

3. One of the FCRA's core protections is that consumer reporting agencies, like Defendant, "follow reasonable procedures to assure **maximum possible accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b) (emphasis added).

4. Plaintiff applied to be a nanny through Care.com. In connection with the hiring process, Defendant produced a background check on Plaintiff that reported a felony burglary and grand theft charges claiming there was a "NAME & DOB MATCH."

5. This was false. In reality, those charges belonged to Martell Robert Scott, not Plaintiff. Sterling reported a match because of its faulty and systematic matching procedures, which allowed Plaintiff to be matched to a crime committed by someone who was clearly not her.

6. On behalf of herself and three classes of similarly situated individuals, Plaintiff seeks redress from Sterling for its willful and reckless violations of the FCRA.

## THE PARTIES

7. Plaintiff Grace Grissom is an individual person living in Jacksonville, Florida.

8. Defendant Sterling Infosystems, Inc. is a corporation doing business throughout the United States. Defendant Sterling's principal place of business is located at 1 State Street Plaza, New York, New York 10004.

9. Defendant Sterling is a consumer reporting agency as defined at 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

10. Background screening is a multi-billion dollar industry and Sterling receives hundreds of millions of dollars for generating background checks.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), because Defendant resides in this District.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

13. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background checks like the one prepared in Ms. Grissom's name.

14. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Sterling, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

15. Congress recognizes that consumer reports can have life-changing consequences.

16. One of the primary purposes of the FCRA is to ensure "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

17. The FCRA provides a number of protections for job applicants who are the subject of criminal background checks.

18.     In particular, 15 U.S.C. § 1681e(b) requires consumer reporting agencies "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

19.     Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

20.     As summarized in a recent report by the Consumer Financial Protection Bureau,[1] a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. (CFPB Report at 4.)

21.     The criminal background check industry takes in revenues of $3 billion a year industry and is growing.[2] Sterling accounts for over 6% of that revenue.

22.     Sterling's reports are frequently inaccurate, and Sterling has been sued dozens of times for reporting inaccurate criminal record information.

23.     In 2017, Sterling settled a class action lawsuit for $5.9 million alleging that Sterling produced inaccurate background checks. *Ridenour v. Sterling Infosystems, Inc.*, Case No. 2:15-cv-41 (E.D. Va.).

24.     In November 2019, the CFPB brought a complaint against Sterling alleging that Sterling "failed to follow reasonable procedures to assure maximum possible accuracy of the

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").
[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

criminal-record information in its consumer reports."[3] Sterling resolved that matter by agreeing to pay $6 million to affected consumers and to pay a $2.5 million civil penalty.[4]

25. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with no manual, in person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

26. Background check companies collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites using web crawlers.

27. Often, the first step in creating a background check is to run a social security trace that provides potential addresses and aliases to search for criminal records. The purpose of the social security trace is to obtain different names and addresses which might be associated with the subject of the report. However, the use of social security trace data can also introduce uncertainty into any match, as there is a readily apparent possibility that the information returned by the "trace" will pertain to a different individual than the intended subject of the report.

28. Sterling runs a social security trace as part of its background check process. https://www.sterlingcheck.com/services/criminal-background-checks/

29. On its website, Sterling explains that "[w]hile a Social Security Number (SSN) trace isn't required for most criminal record checks, our Complete Criminal Record Locator uses

---

[3] https://files.consumerfinance.gov/f/documents/cfpb_sterling-infosystems-inc_complaint_2019-11.pdf.
[4] https://files.consumerfinance.gov/f/documents/cfpb_sterling-infosystems-inc_stipulated-order_2019-11.pdf

a Social Security Number Trace to automatically find and search up to 20% more criminal records than any other background screening provider."[5]

30. Social security numbers, however, are not randomly assigned nine-digit numbers. The number is based on geography. Thus, people born around the same time in the same place can have similar social security numbers. This is why social security numbers are demonstrably "easy to guess."[6]

31. Indeed, the last four digits of a social security number are not very unique. In fact, out of 119 people, there is a 50% chance that two people will have the same last four digits of a social security number.

32. Matching based on birthdates is also less than reliable based on the well-known "birthday problem." In a random group of 23 people, there is a 50 percent chance that two people have the same birthday.[7]

33. Further, identity theft and misuse of social security numbers is common. For instance, in 2018, there were 14.4 million victims of identity fraud.[8]

34. Thus, overreliance on automated processes that match criminal records with aliases found using only social security traces can result in inaccurate background checks.

### **DEFENDANT STERLING'S INACCURATE EMPLOYMENT BACKGROUND CHECK**

35. Plaintiff applied to Care.com to work as a nanny.

---

[5] https://www.sterlingcheck.com/resources/customer-faqs/
[6] https://www.sciencemag.org/news/2009/07/social-security-numbers-are-easy-guess
[7] https://www.scientificamerican.com/article/bring-science-home-probability-birthday-paradox/#:~:text=The%20birthday%20paradox%2C%20also%20known,people%20have%20the%20same%20birthday.
[8] https://www.javelinstrategy.com/coverage-area/2019-identity-fraud-report-fraudsters-seek-new-targets-and-victims-bear-brunt

36. Through Care.com, Plaintiff interviewed with and found a family willing to hire her as a nanny to their children.

37. On September 22, 2019, as part of Care.com's screening process, a background check request was submitted to Sterling. Sterling had previously run reports on Plaintiff that had not reported any criminal records.

38. Sterling ran a "SSN Trace" on Plaintiff. Per the report, "[t]he SSN Trace compares the provided Social Security Number to credit header and public records data. This trace may locate possible alternative names or addresses associated with the SSN for the purpose of performing additional searches. The SSN trace is not conducted through the Social Security Administration and should not be used as the basis for any employment decision or confirmation of identity."

39. Defendant does not identify a separate source of its social security number trace information on its reports.

40. The SSN Trace revealed the "Alternative name" of Martell Scott for Plaintiff. Per the report, "[p]ossible alternative names may include maiden names, aliases, family and household members associated with the candidate, or misspellings in records."

41. Plaintiff has no relation to Martell Scott. Nor is Martell Scott an alias for Plaintiff.

42. The SSN Trace also apparently revealed an address supposedly associated with Plaintiff and Martell Scott in Lake Wales, Florida in Polk County.

43. Plaintiff has never lived in Polk County or in Lake Wales, Florida.

44. Under the "Criminal Check by Jurisdiction" of the report, Sterling reported that it had run a search of Polk County, Florida, and found a case with five charges, two felony burglary

7

charges, one felony charge for grand theft of a motor vehicle, and misdemeanor charges for petit theft and criminal mischief.

45. These charges were listed as a "NAME & DOB MATCH."

46. This reporting was defamatory and false. None of those charges belonged to Plaintiff. Instead those charges belonged to Martell Scott.

47. Not only did Defendant's report falsely state that the record reported was a "NAME & DOB MATCH" to Plaintiff's record, the report also falsely linked Plaintiff to a record that obviously did not belong to her.

48. This is confirmed by a quick glance at the available online records which show that the charges belong to Martell Scott who is listed as a black male.

49. Plaintiff has no criminal history.

50. Plaintiff disputed her report to Sterling.

51. Upon her dispute, Sterling corrected the report finding that Plaintiff was a "Caucasian Female" and Mr. Scott was an "African-American Male."

52. In particular, the dispute notes indicate that "Dispute team amended to remove the case as NOA. Defendant is an African American Male and applicant is a Caucasian Female." Plaintiff does not know what the term "NOA" means.

53. The same dispute notes state that the "Preventative Action" was "Predetermined Risk."

54. By the time Plaintiff's dispute had been processed, the position through Care.com was no longer available.

55. After receiving Defendant's report, Plaintiff, through counsel, requested that Defendant disclose the sources of all information in her report as required by 15 U.S.C. §1681g(a).

8

56. Defendant did not identify a separate source of SSN Trace information in its response to Plaintiff's request.

## DEFENDANT'S WILLFUL VIOLATIONS OF THE FCRA

57. Despite being sued dozens of times, Defendant fails to follow "reasonable procedures to ensure maximum possible accuracy" in its reports. 15 U.S.C. § 1681e(b).

58. Defendant is well aware of the FCRA's requirement and boasts on its website that "Compliance is our expertise" and "Our background checks comply with federal and state background screening laws."[9]

59. Defendant, however, does not follow the FCRA. Instead, Defendant utilizes a social security trace that results in overbroad record matching.

60. Defendant then does not adequately check the public records to ensure that the subject of the report is the same individual who is the subject of the public record.

61. Further, Defendant inaccurately states on its reports that the record reported is a "NAME & DOB MATCH" when in reality the "name" to which the record was matched is a completely different *alleged* alias.

62. Defendant's statements about the nature of the "NAME & DOB MATCH" are demonstrably false, as the "name" to which the record was matched here is a completely different name than Plaintiff's name, and is not a name she has ever used, as an alias or otherwise.

63. The result is an inaccurate report that matches a record that does not belong to the subject of the report.

64. All of these mismatches are a result of Defendant's intentional actions and procedures that are designed not to ensure accuracy but to be able to advertise to its customers

---

[9] https://www.sterlingcheck.com/resources/customer-faqs/

9

that its procedures pull in 20% more records than their competitors, combined with Defendant's desire to claim that its records are matches to "NAME & DOB" even when they are not.

65.     Defendant could have avoided such inaccurate reports by checking underlying records, which are available online, to ensure that the criminal records reported actually matched the subject of the report.

66.     Defendant could have also written algorithms to flag when reports contained records where neither the first nor last name on the record matched the name of the subject of the report.

67.     Defendant could have chosen not to falsely claim that records are a "NAME & DOB MATCH" when they are not.

68.     Defendant is well aware of the FCRA's prohibition on reporting inaccurate information. Defendant has adopted such a practice despite knowing that its practices do not comply with the FCRA.

69.     Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

## CLASS ACTION ALLEGATIONS

70.     Plaintiff asserts a claim for violations of 15 U.S.C. § 1681e(b) against Defendant on behalf of herself and the **Inaccurate Criminal Records Reporting Class** defined as follows:

i.     All individuals on whom Defendant prepared a background check on or after two years preceding the filing of this Complaint and continuing through the date the class list is prepared;
ii.    Whose background check contains information relating to a criminal offense;
iii.   Where the criminal offense was reported because the name of the offender

            matched a name obtained through an SSN Trace; and
- iv. Where the (a) first name and last name or (b) date of birth does not match the subject of the report

71. Plaintiff asserts a claim for violations of 15 U.S.C. § 1681e(b) against Defendant on behalf of herself and the **Inaccurate Name Match Reporting Class** defined as follows:

- i. All individuals on whom Defendant prepared a background check on or after two years preceding the filing of this Complaint and continuing through the date the class list is prepared;
- ii. Whose background check contains information relating to a criminal offense;
- iii. Where the criminal offense was reported because the name of the offender matched a name obtained through a SSN Trace;
- iv. Where the offender's name is not the same as the individual's name; and
- v. Where the report states that the record was reported based on a NAME MATCH

72. Plaintiff asserts a claim for violations of 15 U.S.C. § 1681e(b) against Defendant on behalf of herself and the **Disputed Reporting Subclass** defined as follows:

- i. All individuals on whom Defendant prepared a background check on or after two years preceding the filing of this Complaint and continuing through the date the class list is prepared;
- ii. Whose background check contains information relating to criminal offense;
- iii. Where the criminal offense was reported because the name of the offender matched a name obtained through a SSN Trace;
- iv. Where the (a) first name and last name or (b) date of birth does not match the subject of the report; and
- v. Where Defendant removed the record after a dispute

73. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3).

74. <u>Numerosity</u>: The Classes are sufficiently numerous. Defendant issues millions of consumers reports each year, many of which inaccurately report criminal information.

75. <u>Commonality</u>: This case presents common questions of law and fact, including but not limited to:

      a)      Whether Defendant violated the FCRA by reporting inaccurate criminal records in its reports;

      b)      Whether it is a reasonable procedure to match records based on a SSN Trace;

      c)      Whether Defendant's violations of the FCRA were willful; and

      d)      The proper measure of damages.

76. <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the Classes.  The FCRA violations suffered by Plaintiff are typical of those suffered by other class members, and Defendant treated Plaintiff consistent with other class members in accordance with its standard policies and practices.

77. <u>Adequacy</u>:  Plaintiff will fairly and adequately protect the interests of the Classes, and has retained counsel experienced in complex class action litigation.  Plaintiff has no interests that conflict with those of any class members.

78. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA.  Members of the Classes do not have an interest in pursuing separate actions against Defendant, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution.  Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices.  Moreover, management of this action as a class action will not present any likely

difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

**CLAIMS FOR RELIEF**

**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**On behalf of Plaintiff, the Inaccurate Reporting Class, the Inaccurate Name Match Reporting Class and the Disputed Reporting Subclass**

79. In return for money, Defendant furnished consumer reports on Plaintiff and other members of the Classes to third parties.

80. The consumer reports provided by Defendant included inaccurate criminal information due to Defendant's overbroad matching procedures.

81. The foregoing violations were negligent and/or willful. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and class members under 15 U.S.C. § 1681e(b). In addition to the allegations set forth above, Defendant's willful conduct is reflected by, *inter alia*, the following:

a) The FCRA was enacted in 1970; Defendant has had years to become compliant;

b) Defendant is a large corporation which specializes in furnishing consumer reports for employment purposes and has access to legal advice through its own general counsel's office and outside counsel. Yet, there is no contemporaneous evidence that Defendant determined that its conduct was lawful;

c) Defendant could have easily cross-referenced court records to ensure that inaccurate information was not included in its reports;

d) Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

e)	Despite the pellucid statutory text and there being a depth of guidance, Defendant adopted a policy of systematically reporting inaccurate criminal information in its reports. By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

82.	Plaintiff and the Classes are entitled to actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

83.	Plaintiff and the Classes are entitled to actual damages or to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

84.	Plaintiff and the Classes are entitled to such amount of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2).

85.	Plaintiff and the Classes are further entitled to recover their costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Classes, prays for relief as follows:

a)	Determining that this action may proceed as a class action;

b)	Designating Plaintiff as representative for the Classes and designating Plaintiff's Counsel as counsel for the Classes;

c)	Issuing proper notice to the Classes at Defendant's expense;

d)	Declaring that Defendant committed multiple, separate violations of the FCRA;

e)	Declaring that Defendant acted willfully, in deliberate or reckless disregard of Plaintiff's rights and Defendant's obligations under the FCRA;

f)	Awarding actual, statutory, and punitive damages as provided by the FCRA;

g)   Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

h)   Granting further relief, in law or equity, as this Court may deem appropriate and just as provided by the FCRA.

## DEMAND FOR JURY TRIAL

86.   Plaintiff and the Classes demand a trial by jury.


Dated: September 25, 2020

s/ E. Michelle Drake
E. Michelle Drake*
John G. Albanese*
BERGER MONTAGUE PC
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel: (612) 594-5933
Fax: (612) 584-4470
Email: emdrake@bm.net
           jalbanese@bm.net
*pro hac vice forthcoming

*Counsel for Plaintiff*
