UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                      :

GRACE GRISSOM,                      :
*individually and on behalf of those similarly*  :
*situated*,                           :
                                 :          20-CV-7948 (VSB)
                     Plaintiff,   :
                                 :        **OPINION & ORDER**
        - against -          :
                                 :
STERLING INFOSYSTEMS, INC.,     :
                                 :
                   Defendant.  :
--------------------------------------------------------X

<u>Appearances</u>:

John G. Albanese
Eleanor Michelle Drake
Berger Montague PC
Minneapolis, MN
*Counsel for Plaintiff and the Proposed Class*

Pamela Q. Devata
John W. Drury
Robert Tadeusz Szyba
Seyfarth Shaw LLP
Chicago, IL and New York, NY
*Counsel for Defendant*

<u>VERNON S. BRODERICK, United States District Judge</u>:

       This class action was filed on September 25, 2020 against Defendant Sterling

Infosystems, Inc. ("Defendant" or "Sterling"), a company that creates background check reports.

(Doc. 1 ¶ 1–9.)  Plaintiff Grace Grissom ("Plaintiff" or "Grissom") brought this action under the

Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*., on behalf of individuals allegedly

injured because Sterling's background check returned false information.  (*Id*.)

Before me is Plaintiff's motion, on behalf of herself and two putative classes of persons similarly situated, for preliminary approval of the class action settlement reached with Sterling. (*See* Doc. 43 (motion for preliminary settlement approval); Doc. 43-1 (the memorandum in support, or "Mem.")).  The motion for preliminary settlement approval is unopposed.  Along with the motion, Plaintiff has submitted the proposed settlement agreement, (Doc. 43-3 (the "Agreement")), a proposed order preliminarily approving the Agreement, (Doc. 43-6), a declaration of Plaintiff's attorney Michelle Drake, (Doc. 43-2 ("Drake Decl.")), Drake's resume, (Doc. 43-5), and the resume of Plaintiff's law firm (Doc. 43-4)  Because I find after a preliminary evaluation that the settlement is fair, reasonable, and the result of good faith negotiation, Plaintiff's motion is GRANTED.

## I.     <u>Background</u>[1]

In September 2019, Plaintiff applied to work as a nanny on an online nanny matching service.  (*Id*. at 2.)  As part of that website's screening process, Plaintiff agreed to undergo a background check conducted by Defendant Sterling.  (*Id*.)  Sterling ran Plaintiff's Social Security number ("SSN") through its SSN Trace tool, which searches for, among other things, criminal records.  (*Id*.)  Sterling's SSN Trace "revealed an 'alternative name' of Martell Scott that was associated with Plaintiff."  (*Id*.)  However, Plaintiff had "no relation to" Martell Scott, and never lived in the location where Scott is alleged to have lived.  (*Id*. at 3.)  Sterling's SSN Trace also revealed that there were five criminal charges associated with Martell Scott.  (*Id*.)  Sterling's background report therefore incorrectly flagged Plaintiff as having a criminal background.  By

---

[1] The factual and procedural background in this section of the Opinion & Order were taken from the "Background" section of the memorandum of law in support of the motion for preliminary settlement approval.  (Mem. at 2–4.)

the time Plaintiff corrected the background report, the nanny position Plaintiff sought had

already been filled.  (*Id.*)

      The proposed Agreement consists of two settlement classes.  The "Injunctive Relief

Class" is defined as:

> All consumers for whom Sterling matched a record included in a consumer report
> based on a name developed through a SSN trace from September 25, 2018 through
> June 4, 2021 wherein the consumer's first name, last name and middle name or
> middle initial did not exactly match the first name, last name, middle name or
> middle initial of the record reported.

(Agreement § 1.28.)  The parties estimate there are approximately 44,658 members of the

Injunctive Relief Class, (*id.*), each of whom will release "their ability to bring claims against

Defendant as part of a mass or aggregated proceedings" in exchange for Defendants' agreement

to change the way its SSN Trace tool works.  (Mem. at 1–2.)

      The "Damages Class" is defined as:

> All consumers for whom Sterling matched a record included in a consumer report
> based on a name developed through a SSN Trace from September 25, 2018 through
> June 4, 2021 wherein the consumer's first name, last name and middle name or
> middle initial did not exactly match the first name, last name, middle name or
> middle initial of the record reported; and where the consumer either made a dispute
> to Defendant regarding the report and an amended report was issued or where a
> pre-adverse action notice was sent to the consumer regarding the report.

(Agreement § 1.12.)  The parties estimate there are approximately 7,469 members of the

Damages Class.  (*Id.*)  Members of the Damages Class will agree to release SSN-Trace-related

claims against Defendant in exchange for Defendant depositing $2,500,000 into a common fund,

from which payments will be made to members of the Damages Class.  (Mem. at 1.)  "If the

anticipated fees, costs, and service award are approved, Damages Class Members are expected to

receive checks for between $175-200 each, with a double payment for those Damages Class

Members that either (i) disputed information on their consumer reports and where an amended report was issued; or (ii) submit a claim attesting that they were harmed." (*Id*.)

Plaintiff filed this putative class action on September 25, 2020, alleging that Sterling's SSN Trace feature was not a "reasonable procedure[] to assure maximum possible accuracy" in background check reports as required by FCRA, 15 U.S.C. § 1681e(b). (Mem. at 1.) The parties engaged in discovery between approximately April 2021 and June 2022, (*see* Docs. 22, 33), which involved review of over 7,000 pages of documents and "millions of pieces of information." (Mem. at 3.) Following discovery, the parties attended a mediation session before Judge Diane Welsh on October 25, 2022. (*Id*.) The parties reached an agreement in principle to settle on December 13, 2022, and submitted their proposed agreement for my preliminary approval on February 28, 2023. (*Id*. at 3–4.) The instant motion seeks: (1) preliminary approval of the Agreement; (2) certification of the Damages Class and the Injunctive Relief Class for settlement purposes; (3) notice to be distributed to each class; and (4) scheduling of a final approval hearing. (Doc. 43.) The motion is unopposed.

## II.    Legal Standard

### A.    *Preliminary Settlement Approval*

It is within a district court's discretion to approve proposed class action settlements. *See Kelen v. World Fin. Network Nat'l Bank*, 302 F.R.D. 56, 68 (S.D.N.Y. 2014). "The compromise of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 114 (2d Cir. 2005) (quoting 4 Alba Conte & Herbert B. Newberg, Newburg on Class Actions § 11:53, at 167 (4th ed. 2002)). The parties and their counsel are in a unique position to assess the potential risks of litigation, and thus district courts in exercising their discretion often give weight to the fact that the parties have chosen to settle.

*See Yuzary v. HSBC Bank USA, N.A.*, No. 12-CV-3693, 2013 WL 1832181, at *1 (S.D.N.Y. Apr. 30, 2013).

Federal Rule of Civil Procedure 23(e) requires judicial approval of any class action settlement.  Review of a proposed settlement generally involves preliminary approval followed by a fairness hearing.  *See Silver v. 31 Great Jones Rest.*, No. 11-cv-7442, 2013 WL 208918, at *1 (S.D.N.Y. Jan. 4, 2013).  "[C]ourts often grant preliminary settlement approval without requiring a hearing or a court appearance."  *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014).  However, "[e]ven at the preliminary approval stage, the Court's role in reviewing the proposed settlement 'is demanding because the adversariness of litigation is often lost after the agreement to settle.'"  *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) (quoting *Zink v. First Niagara Bank, N.A.*, 155 F. Supp. 3d 297, 308 (W.D.N.Y. 2016)).  Thus, a district court must consider whether the court "will likely be able to:  (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019) (quoting Fed. R. Civ. P. 23(e)(1)(B)(i)–(ii)) (emphasis omitted); *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 692 (same).  Courts conducting this analysis "must make a preliminary evaluation as to whether the settlement is fair, reasonable and adequate."  *In re Currency Conversion Fee Antitrust Litig.*, No. 01-MD-1409, M-21-95, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) (internal quotation marks omitted).  In making this determination, courts consider the (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members.  Fed. R. Civ. P. 23(e)(2) (A)–(D).  In addition to these four factors, courts in this Circuit also consider

whether the settlement is fair, reasonable, and adequate based on the nine factors[2] established in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974),[3] which partially overlap with the factors in Rule 23(e)(2)(C)–(D).

> **B.    Conditional Settlement Class Certification and Appointment of Class Counsel**

Conditional settlement class certification and the appointment of class counsel have several practical purposes "including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed settlement agreement, and setting the date and time of the final approval hearing." *Almonte v. Marina Ice Cream Corp.*, No. 16-cv-00660, 2016 WL 7217258, at *2 (S.D.N.Y. Dec. 8, 2016).  A proposed settlement class must meet the requirements of Rule 23(a) and (b)(3).  Under Rule 23(a), class certification is appropriate if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims . . . of the representative parties are typical of the claims . . . of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(1)–(4).  "The party seeking class certification bears the burden of establishing each of these elements by a 'preponderance of the evidence.'"  *Lizondro-Garcia*, 300 F.R.D. at 174 (quoting *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008)).  Once each of these four threshold requirements are met, "class certification is

---

[2] The *Grinnell* factors are:  (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *See Grinnell*, 495 F.2d at 463.

[3] The Advisory Committee Notes to the 2018 amendments indicate that the four new Rule 23 factors were intended to supplement rather than displace the *Grinnell* factors.  *See* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment, subdiv. (e)(2)).

appropriate if the action also satisfies one of the three alternative criteria set forth in Rule 23(b)."
*Lizondro-Garcia*, 300 F.R.D. at 174.  To certify a class under Rule 23(b)(3), as the parties seek to
do here, a court must also find "that the questions of law or fact common to class members
predominate over any questions affecting only individual members, and that a class action is
superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed.
R. Civ. P. 23(b)(3).

    **III.**   <u>**Discussion**</u>

        ***A.***   ***Preliminary Approval of Class Settlement***

    Based on the materials Plaintiff has submitted and for the reasons outlined below, I find
that the settlement merits preliminary approval.

        **1.  Adequacy of Representation**

    "Determination of adequacy typically entails inquiry as to whether:  (1) plaintiff's
interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys
are qualified, experienced and able to conduct the litigation."  *Cordes & Co. Fin. Servs. v. A.G.
Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (internal quotation marks omitted).

    Plaintiff's interests are not antagonistic to the interest of the other class members.  By
virtue of the class definitions, Plaintiff and the unnamed class members alike suffered the same
harms—factually incorrect or misleading SSN Trace results.  Plaintiff and the unnamed class
members seek the same relief from these harms, namely monetary damages under FCRA (in the
case of the Damages Class) and changes to Sterling's allegedly unlawful practices (in the case of
the Injunctive Relief Class).  (*See* Mem. at 21; *see also id*. at 17–18.)  Thus, Plaintiff's interests
are aligned with the interests of the unnamed class members' interests.  *Cf. DeMarco v.
Robertson Stephens Inc.*, 228 F.R.D. 468, 471 (S.D.N.Y. 2005) (explaining that a named

plaintiff's interests were not antagonistic to interests of unnamed class members when all suffered losses allegedly as a result of the defendant's conduct).

Plaintiff's attorneys have also demonstrated the necessary qualifications and skill in this matter through their prior results and experience—each of Plaintiff's attorneys have over a decade of class action experience—and through their work on this case, which involved substantial discovery and resulted in a successful mediated settlement. (*See* Drake Decl.; Doc. 43-4 (discussing Plaintiff's firm's qualifications). Therefore, Rule 23(e)(2)(A)'s adequacy of representation prong weighs in favor of approval.

### 2. Existence of Arm's-Length Negotiations

The existence of arm's-length negotiations further counsels in favor of approving the settlement on a preliminary basis. Rule 23(e)(2)(b) requires a court to consider whether a proposed settlement "was negotiated at arm's length." Here, Plaintiff's counsel engaged in at least twelve months of discovery, involving detailed review of thousands of pages of documents and data. Therefore, the parties had a full opportunity to acquaint themselves with the strengths and weaknesses of their respective cases prior to initiating negotiations. After beginning negotiations, the parties engaged a mediator, and subsequently reached a final agreement after at least three months. (Mem. at 11.) *Cf. Puddu v. 6D Glob. Techs., Inc.*, No. 15-CV-8061, 2021 WL 1910656, at *4 (S.D.N.Y. May 12, 2021) (explaining that there is "a presumption of fairness when a settlement is reached with the assistance of a mediator"). All of this suggests that the Agreement is the result of good faith arm's-length negotiations.

### 3. Adequacy of Relief

In assessing the adequacy of a settlement under Rule 23(e)(2)(C)(i), "courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." *In re Payment Card*, 330 F.R.D. at 36 (quoting Fed. R. Civ. P. 23

advisory committee's note to 2018 amendment).  This inquiry overlaps with the *Grinnell* factors of "complexity, expense, and likely duration of the litigation" along with "the risks of establishing liability," "the risks of establishing damages" and "the risks of maintaining the class action through the trial."  *See Grinnell*, 495 F.2d at 463.

The parties expect each member of the Damages Class to receive a payment of approximately $175 to $200.  (Mem. at 12.)  This estimate is in line with FCRA's per-violation statutory damages range of $100 to $1,000.  15 U.S.C. § 1681n.  Plaintiff has also submitted various other court approved FCRA settlements with recoveries in this range.[4]

The Injunctive Relief Class likewise will receive meaningful relief preventing Defendant's SSN Trace from misattributing criminal records in a similar manner as alleged. (Mem. at 13–14.)  This relief is especially significant given that FCRA "does not provide for injunctive relief to consumers."  *Owoyemi v. Credit Corp Sols. Inc.*, 596 F. Supp. 3d 514, 519 (S.D.N.Y. 2022).

The risks of further litigation reinforce why the relief Plaintiff obtained on behalf of the class is adequate.  These risks include that "FCRA does not provide for strict liability for a [consumer reporting agency] that reports inaccurate information," *Wenning v. On-Site Manager, Inc.*, No. 14-CV-9693, 2016 WL 3538379, at *16 (S.D.N.Y. June 22, 2016), and that under 15 U.S.C. § 1681n, Plaintiff would need to show any violation of FCRA was "willful" before obtaining statutory damages from Defendant.  (Mem. at 14.)  *See also Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57–58 (2007) (interpreting the statute's willfulness requirement).

---

[4] *See Ryals v. HireRight Solutions, Inc.*, No. 09-cv-625 (E.D. Va. Dec. 22, 2011), ECF No. 127 (providing between $15 and $200 per class member); *Dougherty v. QuickSIUS, LLC*, 15-cv-06432 (E.D. Pa. May 31, 2018), ECF No. 66  ($104 to $419 per class member); *Patel v. Trans Union, LLC*, No. 14-cv-00522, 2018 WL 1258194, at *5 (N.D. Cal. Mar. 11, 2018) ($400 per class member plus ability to claim further damages); *Stokes v. RealPage, Inc.*, No. 2:15-cv-01520 (E.D. Pa. Feb. 6, 2018), ECF No. 63 (approximately $50 per class member).

Under Rule 23(e)(2)(c)(ii), a court must evaluate the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(c)(ii). "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Lea v. Tal Educ. Grp.*, No. 18-cv-5480, 2021 WL 5578665, at *11 (S.D.N.Y. Nov. 30, 2021) (internal quotation marks omitted). "When formulated by competent and experienced class counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014) (internal quotation marks omitted).

The distribution plan here has been formulated by experienced counsel. The Agreement indicates that once the claims administrator notifies each member of the Damages Class by electronic and postal mail, each member will automatically receive a payment, and "those who disputed and had an amended report issued or who attest to further harm will receive a double payment." (Mem. at 16; Agreement § 8.) I find there is little risk that this process will be unduly demanding or unable to filter out unjustified claims. Therefore, I conclude that this plan is fair, reasonable, and adequate.

In assessing the adequacy of the relief, Rule 23 also requires the court to examine the proposed attorneys' fees. Fed. R. Civ. P. 23(e)(2)(c)(iii). Here, Plaintiff anticipates filing an application for a fee award of an amount of "not to exceed" one-third of the fund set aside for the Damages Class plus reasonable out-of-pocket costs. (Mem. at 16.) This approach is consistent with what other courts in this District have approved. *See, e.g.*, *Suarez v. Rosa Mexicano Brands Inc.*, No. 16-CV-5464, 2018 WL 1801319, at *1 (S.D.N.Y. Apr. 13, 2018); *Zorrilla v. Carlson Rests., Inc.*, No. 14-CV-2740, 2018 WL 1737139, at *2 (S.D.N.Y. Apr. 9, 2018).

10

Plaintiff also contemplates filing a request "for up to" $500,000 as attorneys' fees for the Injunctive Relief Class.  (Mem. at 17.)  This is also consistent with the case law.  *See McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417–19 (2d Cir. 2010) (explaining that fee awards need not only be calculated by percentage-of-fund method); *cf. Berry v. Schulman*, 807 F.3d 600, 617 (4th Cir. 2015) (awarding $5.3 million in fees for obtaining an injunctive-relief-only class). Although I find for purposes of preliminary approval that the attorneys' fee requests appear reasonable, I will require the parties to submit Plaintiff's counsel's billing records and attorney affidavits in order to finally approve the settlement.  *Cf. McDaniel*, 595 F.3d at 419 (explaining that it is within district court's discretion to evaluate fee requests under the lodestar or percentage-of-fund method, and "reaffirm[ing] the requirement of a 'searching assessment'" of a fee request (quoting *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000))).

Finally, a court must consider "any agreement required to be identified under Rule 23(e)(3)," which includes "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(2)–(3).  There are no such agreements here, (Mem. at 9 n.1), so this consideration does not weigh against preliminary approval.

### 4.  Equitable Treatment of Class Members

Rule 23(e)(2)(D) requires the Court to consider whether "the proposal treats class members equitably relative to each other."  The Agreement provides that each Damages Class member will receive either a single payment of approximately $175 to $200, or a double payment if a class member attests to further harm.  (Mem. at 12, 17–18.)  Pro rata distribution is sufficient evidence of equitable treatment.  *See In re Payment Card,* 330 F.R.D. at 47 (finding that a "pro rata distribution scheme is sufficiently equitable").  To the extent the double-damages payments create variation in the relief obtained among members of the Damages Class, it is equitable because it fairly accounts for differences in harm that each member of the Damages

Class suffered. *Cf. Ryals v. Strategic Screening Solutions, Inc.*, No. 3:14-CV-643, 2016 WL 7042947 (E.D. Va. Sept. 16, 2016) (approving FCRA settlement where some class members received $35 and other class members received $11,000); Memorandum in Support of Settlement Approval, *Ryals*, No. 3:14-CV-643 (E.D. Va. June 13, 2016), ECF. No. 64 at 7–8 (explaining structure of *Ryals* settlement).

As part of this factor, I must also consider the incentive payments proposed in the Agreement. "Rule 23(e)(2)(D) does not forbid incentive awards." *Moses*, 79 F.4th at 245. "At the same time, the rule requires that courts reject incentive awards that are excessive compared to the service provided by the class representative or that are unfair to the absent class members." *Id.* The parties have proposed a $10,000 service award to Plaintiff Grissom as the class representative. (Agreement § 8.4.) This award is within the range of service awards approved by courts in this District given counsel's representation regarding the contributions of the named Plaintiff to this case.[5] (*See* Mem. at 17.) Thus, the incentive award is reasonable in light of the particular circumstances of this case.

### 5. Remaining *Grinnell* Factors

The *Grinnell* factors not expressly assessed under Rule 23(e)(2)(C)(i) include "[] the reaction of the class to the settlement; [] the stage of the proceedings and the amount of

---

[5] Courts in this District have regularly approved service awards for individual representative plaintiffs ranging from $1,000 to $10,000. *See, e.g., Johnson v. Body & Pole, Inc.*, No. 22-cv-00857, 2023 WL 3647368, at *2 (S.D.N.Y. May 25, 2023) (approving a $1,000 service award for each named plaintiff); *Hezi v. Celsius Holdings, Inc.*, No. 21-cv-09892, 2023 WL 2786820, at *6 (S.D.N.Y. Apr. 5, 2023) (approving service awards of $5,000 and $10,000); *In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 12-cv-1025, 2023 WL 2663479, at *4 (S.D.N.Y. Mar. 28, 2023) (approving $2,500 service awards); *Santos v. Nuve Miguel Corp.*, No. 21-cv-1335, 2023 WL 2263207, at *3 (S.D.N.Y. Feb. 28, 2023) (approving a $10,000 service award); *Aguirre v. Hello Prod., LLC*, No. 19-cv-09577, 2023 WL 145614, at *4 (S.D.N.Y. Jan. 10, 2023) (approving $3,500 service awards); *Torretto v. Donnelley Fin. Sols., Inc.*, No. 20-cv-02667, 2023 WL 123201, at *3 (S.D.N.Y. Jan. 5, 2023) (approving $2,500 service awards). Other courts have suggested an even broader range of $2,500 to $85,000. *Hart v. BHH, LLC*, No. 15-cv-4804, 2020 WL 5645984, at *5 (S.D.N.Y. Sept. 22, 2020) ("Awards on an individualized basis have generally ranged from $2,500 to $85,000.") Here, it is sufficient to note that the proposed award for Grissom is within either range.

discovery completed; . . . [] the ability of the defendants to withstand a greater judgment; [] the range of reasonableness of the settlement fund in light of the best possible recovery; and [] the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Grinnell*, 495 F.2d at 463.

All five of these factors favor preliminary approval. First, the named Plaintiff favors the Agreement, and her approval is probative of the class reactions at this time since notice has not yet been issued. *See, e.g.*, *Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*, No. 15-cv-3538 (VSB), 2023 WL 3749996, at *5 (S.D.N.Y. June 1, 2023) ("[T]he Representative Plaintiffs favor the Settlement, and their approval is probative of the Class's reaction at this time since notice has not yet been issued.") Second, named Plaintiff has "obtained a sufficient understanding of the case to gauge the strengths and weaknesses of [her] claims and the adequacy of the settlement," *In re AOL Time Warner, Inc.*, No. 02-cv-5575, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006), given, as previously noted, the volume of pre-settlement discovery exchanged. Third, though Sterling potentially could withstand a greater judgment, this fact "does not, standing alone, indicate that the settlement is unreasonable or inadequate." *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) (internal quotation marks omitted). Finally, I have already considered the settlement in light of the best possible recovery and the risks of litigation and have concluded that the Agreement provides adequate recovery for the class. Given the litigation risks already discussed, this is a reasonable and adequate settlement.

### B.    *Conditional Class Certification*

The classes meet the requirements for a class set out by Rule 23(a)(1)–(4). The classes are sufficiently numerous because, according to the parties' estimate, each consists of thousands of members. (Mem. at 19.) Common issues predominate across the class because their harms

stem from Sterling's treatment of class members.  Named plaintiff's claims are typical of the

class because her claims, like all class members, arise out of the same factual and legal

circumstances—Sterling's SSN Trace and its alleged deficiencies.  The adequacy requirements

are met both because the named plaintiff's interests are not antagonistic to those of the class and

because, as discussed above, her attorneys have sufficient skill and experience to competently

represent the class and have achieved a sound result.  Because the class certification request is

made in the context of settlement only, I need not address the issue of manageability.  *See Soler*

*v. Fresh Direct, LLC*, No. 20-cv-3431, 2023 WL 2492977, at *6 (S.D.N.Y. Mar. 14, 2023).

Furthermore, the predominance and superiority requirements of Rule 23(b)(3) are

satisfied because the common legal and factual issues already discussed "predominate over any

questions affecting only individual members" and a class action is a superior method of resolving

these issues.  Fed. R. Civ. P. 23(b)(3).

## IV.    <u>Conclusion</u>

For the foregoing reasons, Plaintiff's unopposed motion for preliminary approval of the

settlement is GRANTED on the terms set out in the Order Preliminarily Approving Class Action

Settlement, Certifying Conditional Settlement Classes, Appointing Class Counsel, Approving

and Directing Notice Plan, Appointing Settlement Administrator, and Setting Fairness Hearing

("Preliminary Approval Order").  The Court will hold a hearing on May 7, 2025 at Thurgood

Marshall U.S. Courthouse, 40 Foley Square, New York, NY, at 2:00pm in Courtroom 518.

Accordingly, it is hereby:

ORDERED that, pending the Final Approval Hearing, all deadlines in this action save

those set out in this Opinion & Order and the Preliminary Approval Order for the purpose of

executing the Agreement are stayed.

IT IS FURTHER ORDERED that I shall retain jurisdiction over this action to consider all further matters arising out of or connected with the Agreement.

The Clerk of Court is respectfully directed to terminate the pending motion at Doc. 43.

SO ORDERED.

Dated: October 30, 2024
       New York, New York

Vernon S. Broderick
United States District Judge